## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VALERIE ARKOOSH, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES; and THE PENNSYLVANIA DEPARTMENT OF HUMAN SERVICES,<br>　　　　　　　Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA; U.S. DEPARTMENT OF AGRICULTURE; BROOKE ROLLINS, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE U.S. DEPARTMENT OF AGRICULTURE; and THE U.S. DEPARTMENT OF AGRICULTURE'S FOOD AND NUTRITION SERVICE,<br>　　　　　　　Defendants. | Docket No. _____<br><br>FILED VIA ECF |

## COMPLAINT

AND NOW comes the Plaintiffs, Valerie Arkoosh, the Secretary of the Pennsylvania Department of Human Services, and the Department of Human Services, and brings this action against the United States of America, the United States Department of Agriculture ("USDA"), Brooke Rollins, in her official capacity

1

as the Secretary of the USDA, and the USDA's Food and Nutrition Service for the

following reasons:

## INTRODUCTION

1.      This lawsuit seeks judicial review of the Decision and Order Docketed

at No. 24-J-0076 issued by the USDA, Office of Administrative Law Judge on June

4, 2025.

2.      That Order denied the Petition for Appeal filed by the Commonwealth

of Pennsylvania, Department of Human Services and upheld the USDA Food and

Nutrition Service's ("FNS") assessed liability amount of $39,503,295.00 brought

under section 16(c)(8)(D)(i), (codified at 7 U.S.C. § 2025(c)(8)(D)(i)) of the Food

and Nutrition Act of 2008 (7 U.S.C. § 2025(c)(8)(D)(i)) for the Federal Fiscal Years

("FY") 2022 and 2023. A copy of the Office of Administrative Law Judge Decision

at Docket No. 24-J-0076, which is attached hereto as Exhibit "A," is the final

decision of FNS.

## PARTIES

**A. Plaintiffs**

3.      The Commonwealth of Pennsylvania, Department of Human Services

("DHS") (collectively hereinafter "Pennsylvania") is an executive agency within the

Commonwealth of Pennsylvania. *See* 71 P.S. § 591; 62 P.S. § 201.  The agency's

primary address of business is 625 Commonwealth Avenue, Harrisburg, PA 17120.

4.    Valerie Arkoosh, M.D. is the Commonwealth of Pennsylvania Secretary of Human Services. She brings this case in her official capacity.

**B. Defendants**

5.    Defendants are the United States of America, through its agency the USDA, Food and Nutrition Service, (hereinafter collectively "USDA" or "FNS"). Defendant USDA is a cabinet agency within the executive branch of the United States government. *See* 7 U.S.C. § 2201.

6.    Defendant Brooke Rollins is the United States Secretary of Agriculture and that is the USDA's highest ranking official. She is charged with the supervision and management of all decisions and actions of that agency. *See* 7 U.S.C. § 2201. She is being sued in her official capacity.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

8.    Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2), (e)(1). Defendants are United States agencies or officers sued in their official capacities

9.    Plaintiffs reside in this district and a substantial part of the events giving rise to this Complaint occurred and continue to occur within this district.

10.   Likewise, 7 U.S.C. § 2023(a)(13), a federal statute, provides judicial

review of the final determination within 30 days, in the United States Court for the district in which the State agency resides or is engaged in business. 5 U.S.C. § 702; *See also*, 7 C.F.R. § 283.20(j).

11.    DHS's primary address of record, as established above, is in Harrisburg, Pennsylvania, which is within the Middle District of Pennsylvania.

## FACTUAL BACKGROUND

12.    Pennsylvania participates in the Federal Supplemental Nutrition Assistance Program ("SNAP"), established by the Food and Nutrition Act of 2008.

13.    SNAP is the primary source of nutrition assistance for low-income Americans. 7 U.S.C. §§ 2011-2036d.

14.    SNAP's mission is "to promote the general welfare, [and] to safeguard the health and well-being of the Nation's population by raising the levels of nutrition among low-income households." 7 U.S.C. § 2011.

15.    Eligible participants are entitled to SNAP benefits, and the amount they receive is tailored to their household needs as determined by their household size and net income after specific exclusions and deductions are made. *See* 7 U.S.C. § 2014.

16.    The SNAP program operates as a Federal-State partnership in which the State administers the program at the service-delivery level, certifying eligible

households and issuing benefits, among other responsibilities. *See* 7 U.S.C. §§ 2011, 2025; 7 C.F.R. § 271.3.

17.    The USDA's FNS, which administers SNAP at the Federal level, pays half the cost of the state's administrative expenses and the full cost of all SNAP benefits. *See id*.

18.    In 1977, Congress adopted a sanction and incentive system for the quality control ("QC") program to encourage more accurate eligibility and benefit determinations at the State level. *See* Pub. L. No. 95-113, Title XIII.

19.    The SNAP QC program encourages payment accuracy and improved program administration by establishing fiscal incentives for States based on their performance in eligibility and benefit determination. *See* 7 U.S.C. § 2025(c)(1)(A)(i).

20.    State agencies with high payment error rates are required to share in the cost of payment error. *See id.*

21.    The SNAP QC program establishes liability for a State when it surpasses the national performance measure ("NPM") for two consecutive years. *See* 7 U.S.C. § 2025(c)(1)(C).

22.    The sanction and incentive system compares each State's performance to an NPM, which is the sum of the products of each State agency's error rate times

that respective State agency's proportion of the total value of national allotments in that fiscal year. *See* 7 U.S.C. § 2025(c)(6)(A).

23.    The first year that FNS determines there is a 95 percent statistical probability that a State's payment error rate exceeds 105% of the NPM for payment error rates, FNS notifies the State, but does not assess a liability amount. *See* 7 U.S.C. § 2025(c)(1)(C).

24.    FNS establishes a liability amount, however, when for the second or subsequent consecutive fiscal year, FNS determines that a 95% statistical probability exists that a State's payment error rate exceeds 105% of the NPM for payment error rates. *See id.*

25.    FNS Regulations provide for the rules and procedures governing the SNAP performance reporting system. *See* 7 C.F.R. Part 275.

26.    FNS also issues Handbook 310, which is intended to provide procedures for conducting QC reviews of SNAP cases. *See* FNS Handbook 310, p. 1-1 Purpose.

27.    States develop a statistical sampling method reviewing "active" and "negative" cases that FNS approves. See *generally* 7 C.F.R. § 275.11(a); 7 C.F.R. § 275.10(a).

28.    FNS uses the statistical data to determine whether there was a 95%

6

statistical probability that a State exceeded 105% of the NPM. *See* 7 C.F.R. § 275.23(d)(2).

29.    By letter dated June 28, 2024, Kumar Chandran, Acting Under Secretary for USDA's Food Nutrition and Consumer Services, notified the honorable Valerie A. Arkoosh, MD, MPH, Secretary of the Pennsylvania DHS of the FY23 fiscal sanction of $39,503,295.00 based on Pennsylvania's combined SNAP program error rate ("PER") for FY22 and FY23. *See* Lower Court Record, Exhibit RX-7.

30.    The letter was accompanied by a Notice of Claim/Bill for Collection for $39,503,295.00. *See* Lower Court Record, Exhibit RX-7.

31.    At the administrative hearing for this appeal, Pennsylvania "established through FNS witnesses and other evidence that, other than the two consecutive years of exceeding the national performance measure, FNS administrators considered Pennsylvania to run a highly effective SNAP program" for the 20 years prior to FY22 and FY23. *See* Decision and Order at 16 and Footnote 53 citing Tr. 98-99, 120-21, 165, 167, 334; Lower Court Record, Exhibit PX-7; Lower Court Record Finding of Fact; Tr. 304.

32.    Moreover, since the Notice of Claim/Bill for Collection was issued, two events have occurred: 1.) USDA retreated from its FY22 and FY23 position and

reverted back to the previous version of Handbook 310 section 752, not the version at issue herein, which inappropriately inflated Pennsylvania's error rate in violation of federal law and USDA's regulation; and 2.) on June 29, 2025, USDA determined that Pennsylvania was once again under the NPM for federal FY24 and no longer in liability status. Pennsylvania's current error rate reflects both the inaccuracy of Handbook 310 section 752's changes and improvements Pennsylvania has made to improve its overall administration of SNAP within the Commonwealth.

### A. *History of FNS's Revisions and Issuance of the FNS Handbook 310 Section 752*

33. Existing regulations at 7 C.F.R. § 275.12(d)(3) specify that states have discretion over the procedures regarding how to proceed when evaluating certain circumstances while identifying SNAP QC variances.

34. FNS issues and revises its Handbook 310, that FNS mandates States must follow, cautioning that "[u]sers of this [310] handbook are expected to understand and accurately apply SNAP certification policies." *See e.g.* 2024 FNS Handbook 310, p. 1-1, Objective.

35. Prior to October 2021, Handbook 310 section 752 read "[t]he reviewer must <u>not</u> determine a household ineligible solely because its certification period has expired. The reviewer must verify the household's actual circumstances for the appropriate sample or budget month and compare them to the EW [eligibility

worker] worksheet. Variances must be included in the error determination, except specific variances described in Section 754-757." (*emphasis added*). *See* Lower Court Record Exhibit PX-16.

36.    This prior iteration of FNS Handbook 310 was consistent with regulations at 7 C.F.R. § 275.12(d)(3).

37.    By way of example, applying the prior Handbook 310 section 752 provision, if a required certification document was missing anything, such as a second signature, State QC was not required to declare a household ineligible for SNAP. State QC typically exercised its discretion granted by 7 C.F.R. § 275.12(d)(3) to take additional steps to verify that the SNAP agency's eligibility determination was correct based on other available information.

38.    Despite neither Congress enacting a new statute nor USDA promulgating a new regulation regarding SNAP or SNAP QC, FNS changed Handbook 310 section 752 for FY22 and FY23, which is at issue here.

39.    The FY22 and FY23 Handbook change then read "[t]he reviewer must determine a household ineligible when its certification period has expired, and the household was not appropriately recertified . . ." (*Emphasis added*). *See* Lower Court Record, Exhibit PX-17.

40.    In conflict with 7 C.F.R. § 275.12(d)(3), the Handbook change

eliminated the State's discretion that it had exercised for decades and did so without advanced opportunity for notice and comment, as required under the Administrative Procedure Act ("APA"), 5 U.S.C. § 553.

41.    With FNS's Handbook 310 section 752 change, if any required certification document was missing, such as the second signature on the recertification form, FNS now dictated that State QC must immediately classify the form as incomplete and determine the household as ineligible.

42.    The effect of this unpromulgated change was that, for the first time, States were required to count the entire household SNAP benefit amount as a countable payment error.

43.    Then, on December 30, 2024, FNS issued a Procedural Clarifications memorandum that provides, effective FY24, as applied to FNS Handbook 310 section 752, "[a] case is not considered ineligible under Section 752 when the case record indicates the household filed an application for recertification, but it is missing from the case record…" This same memorandum stated, this clarification reflects FNS's "long-standing review procedures and information previously provided in response to policy inquires and during trainings." Lower Court Record, Exhibit, PX-13.

44.    This FY24 iteration is similar to the versions FNS issued for decades

prior to FY22, which did <u>not</u> require States to automatically determine the household ineligible, resulting in a payment error.

45.    For example, missing signatures on the application's Rights and Responsibilities pages will, again, <u>not</u> constitute a payment error but rather be noted as an administrative deficiency if there is one signature elsewhere on the application. *See e.g.* Lower Court Record, Exhibit PX-16 - FNS Handbook 310, October 2018.

46.    Prior to FNS's revision of Handbook 310 section 752, the household's actual substantive eligibility for SNAP and the correct amount of SNAP benefits issued were always considered relevant during each SNAP QC review.

47.    Although all prior versions of Handbook 310 section 752, required states to document procedural errors that did not impact a household's eligibility or benefit amount under statutory and regulatory guidelines, these errors did not count toward the State's QC error rate.

48.    FNS Handbook 310 for FY22 AND FY23 changes suddenly counted benefits issued to certain households as errors solely due to procedural mistakes that did not affect substantive eligibility for SNAP, such as instances where a recertification was overdue or an application was missing from the file, including merely missing a second signature on the final page not required in FNS regulations.

49.    USDA FNS implemented this policy reversal without public notice or

11

input, and there is no public record indicating that the changes were communicated to the States and the public to provide feedback as stakeholders.

50. FNS determined that these types of administrative deficiencies should be treated as payment errors even if State QC could have determined that the household was substantively eligible based on income and other SNAP eligibility criteria.

51. However, current regulations at 7 C.F.R. § 275.12(d)(3) specifically identify overdue recertifications and the absence of a current application on file as procedural deficiencies that are <u>not</u> counted as errors if the household meets SNAP substantive eligibility requirements.

52. Moreover, this FNS Handbook 310 change contradicted longstanding FNS rules and policy and resulted in increased error rates for Pennsylvania in FY22 and FY23.

53. These prior versions of the FNS Handbook 310 aligned with the Food and Nutrition Act of 2008 and its legislative history by basing errors on substantive SNAP eligibility, rather than on mere procedural errors that did not affect a household's actual SNAP eligibility.

54.    Section 16(c)(2)(B) of the Food and Nutrition Act of 2008 defines "overpayment error rates" as: "the percentage of the value of all allotments issued in a fiscal year by a State agency that are either:

> (i) issued to households that fail to meet basic program eligibility
>
> requirements; or
>
> (ii) overissued to eligible households."

7 U.S.C. § 2025(c)(2)(B).

55.    FNS has long interpreted "basic program eligibility requirements" to mean the SNAP substantive financial and non-financial criteria for eligibility, consistent with Congressional intent. *See* H. Rep. No. 97-687, at 55-56, 67-68, 98 (Aug. 2, 1982).

56.    Congress adopted the modern QC program out of concern for financial losses to the SNAP Program. Issuing benefits to a household that meets all the substantive requirements established by Congress does not result in any loss to the SNAP Program. *See* S. Rep. No. 97-504, at 69 (July 26, 1982).

57.    A States' QC error rate was not affected by procedural issues listed in 7 C.F.R. § 275.12(d)(3) because that regulation unambiguously gives states the discretion whether to act on these other findings that are procedural in nature. *See* 7 C.F.R. § 275.12(d)(3).

13

58.    Since the FY22 change, FNS has revised Handbook 310 section 752 to modify this policy for the Handbook 310 that covered FY24.

59.    This Handbook 310 change for FY22 and FY23 prevented Pennsylvania from mitigating procedural issues caused by simply missing a second applicant signature on a multipage application for benefits. *See* Lower Court Record, Transcripts pp. 234-235.

60.    FNS Handbook 310 section 110 provides that "[a]ll reviews are conducted in accordance with *Federal regulations*, State Options, and approved waivers." (Emphasis added). FNS Handbook 310, Purpose at p. 1-1.

61.    As outlined above, federal regulations expressly exclude certain procedural errors from the State's Payment Error Rate ("PER"), such as those identified in FNS Handbook 310 section 752, and instead instruct states to handle these "other findings" per the State's discretion. *See* 7 C.F.R. § 275.12(d)(3).

62.    Pennsylvania presented evidence and testimony showing that, if the error amounts attributable solely to section 752 of Handbook 310 were excluded, its performance error rate would fall below the national performance measure. *See* Lower Court Record Transcripts pp. 248 – 251; Lower Court Record Exhibit PX-1.

63.    The Administrative Law Judge ("ALJ") determined that his tribunal was not the appropriate forum for Pennsylvania to challenge the Handbook 310

changes as unlawful on the grounds that they violated the APA and conflicted with existing regulations. As a result, the ALJ concluded that Pennsylvania was not entitled to relief. *See* Decision and Order, p. 11. Notwithstanding this, the ALJ did note that the issue was preserved for judicial review. Decision and Order, p. 13.

64. In reaching his conclusion, the ALJ stated he was constrained by 7 C.F.R. § 283.19(c)(2), "which states that an ALJ may not rule on the validity of Federal statutes or regulations." *See* Decision and Order, p. 11.

65. Pennsylvania, however, argued that the ALJ had authority to enforce and uphold the existing statutes and regulations by ruling against the Handbook 310 change that directly conflicted with 7 C.F.R. § 275.12(d)(3).

66. The ALJ failed to apply the controlling authority at 7 C.F.R. § 275.12(d)(3), which prevails over Handbook 310, particularly with respect to defining what constitutes a what is or is not a countable error. *See* Decision and Order, p. 12.

67. The ALJ held that 7 C.F.R. § 283.19 precluded him from striking the Handbook 310 section 752, holding that "ruling on the validity of the changes to section 751 and 752 would be equivalent to ruling on the validity of the underlying statute and regulations." *See* Decision and Order, p. 13.

68. Section 283.19, however, only governs an ALJ's authority to invalidate

a statute or regulation but does not preclude the ALJ from invalidating a handbook section.

69.    The ALJ held that "By addressing these issues, however, I recognize that Pennsylvania has timely raised and preserved them for appeal to the Judicial Officer and/or the courts." Decision and Order, p. 13.

## CLAIM FOR RELIEF

**Count I – Violation of the Administrative Procedure Act ("APA"):**
**The ALJ failed to apply the controlling legal authority and instead relied on the handbook that conflicted with a federal regulation and, in doing so, removed the regulatory discretion previously granted to the States, contrary to law.**

70.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs.

71.    The decision of the ALJ is contrary to law, including 5 U.S.C. § 706(2) and should be set aside for reasons that include:

(a)    failure to apply the controlling regulation at 7 C.F.R. § 275.12(d)(3) over a conflicting revision to the FNS Handbook 310,

(b)    erroneously conflating the "good cause" provision that does not grant relief when a change is common to all states with the requirements of the APA, which do not excuse a violation of the APA simply because the violation was common to all states, and

16

(c)  an incorrect legal conclusion by the ALJ that he lacked authority to grant relief to Pennsylvania without revising the NPM and states' error rates, despite 7 U.S.C. §§ 2025(c)(7)(B) and (c)(8)(H) specifically providing for administrative or judicial review to reduce or eliminate the liability when the Secretary imposes an improper liability determination on an individual state.

72.    Under the APA, a reviewing court shall hold unlawful agency action that is "not in accordance with law." *See* 5 U.S.C. § 706(2)(A).

73.    The APA mandates that courts "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (*Sierra Club v. Mainella*, 459 F. Supp. 2d 76 (D.D.C. 2006)).

74.    Executive agencies must follow the laws that govern their conduct and may not engage in any conduct that violates the law. *See id*.

75.    Handbooks, manuals, and similar documents issued by federal agencies do not have the force of law unless they are promulgated in accordance with the procedural requirements set forth in the APA and other relevant statutes. *See id.*

76.    The sub-regulatory changes FNS implemented in Handbook 310 section 752 for FY22–FY23 directly conflict with federal SNAP regulations.

77.    Agencies may not use guidance documents, like Handbook 310, to establish a "binding norm." *See Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 506 F.2d 33, 38 (D.C. Cir. 1974).

78.    FNS's Handbook 310 change imposed new obligations on States, leaving States without the ability to exercise the discretion provided in 7 C.F.R. § 275.12(d)(3), as well as eliminating FNS's discretion.

79.    Guidance must not impose any new obligations on a regulated party and must leave the federal agency the freedom to exercise discretion. *See Am. Bus. Ass'n v. United States*, 627 F.2d 525, 529 (D.C. Cir. 1980) (quoting *Texaco, Inc. v. Fed. Power Comm'n*, 412 F.2d 740, 744 (3d Cir. 1969)).

80.    This Handbook 310 change did not leave Pennsylvania or FNS with discretion to deviate from the Handbook and follow 7 C.F.R. § 275.12(d)(3) when evaluating cases during the QC process.

81.    FNS regulation at 7 C.F.R. § 275.12(d) outlines the elements of program eligibility that States must identify and provides guidance on how to categorize issues as follows: a. those included in the error analysis; b. those excluded from the error analysis; and c. other issues that USDA FNS allows states the discretion to address or disregard.

82.    Section 275.12(d)(3) provides that an expired certification period alone

does not itself constitute a procedural deficiency that the State must count in its error analysis.

83.    These procedural (also called "administrative" or "technical") errors are listed as "other findings" but are not included as QC payment errors. *See* 7 C.F.R. § 275.12(d)(3).

84.    The history of 7 C.F.R. § 275.12(d)(3) reveals that FNS created it to "reduce the burden of identifying and reporting deficiencies which do not contribute to errors" and would "allow State agencies to focus their resources on correcting errors which result in errors." 49 Fed. Reg. 6,292, 6,294 (Feb. 17, 1984).

85.    Because FNS changed the Handbook 310 section 752 in a manner that conflicted with existing regulation without proposing regulatory amendment to 7 C.F.R. § 275.12(d)(3) and without affording prior notice and comment, FNS acted in violation of federal law.

86.    By issuing these Handbook changes in violation of the APA, FNS altered the established methodology in a way that compelled Pennsylvania to count payment errors that would otherwise be excluded, which eliminated the State's lawful discretion under 7 C.F.R. § 275.12(d)(3) to disregard such procedural deficiencies.

87.    In doing so, FNS violated its own implementing regulations, exceeded

its authority, contrary to law, in violation of the APA, specifically 5 U.S.C. § 706(2).

88.    FNS's violations have caused and will continue to cause Pennsylvania financial injuries described herein.

## PRAYER FOR RELIEF

Plaintiffs respectfully ask that this Honorable Court issue an Order:

a.  Declaring that USDA/FNS acted in violation of the 7 C.F.R. § 275.12(d)(3) and the APA by contradicting an existing regulation and did so without proposing regulatory change via proper notice and an opportunity for public comment;

b.  Finding that FNS's FY22 and FY23 Handbook 310 section 752 created a binding norm that required States to count procedural errors in its QC review;

c.  Enjoining USDA/FNS from imposing a $39,503,295.00 penalty against Pennsylvania;

d.  Setting aside the underlying administrative Decision and Order as contrary to law, and without observance of procedures required by law;

e.  Setting aside Pennsylvania's QC error determinations made by FNS pursuant to the Handbook 310 section 752 provisions; and

f.  Awarding Pennsylvania any other relief the Court may deem just and

proper.

**WHEREFORE**, the COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF HUMAN SERVICES prays that this Honorable Court reverse the Decision and Order of the Office of Administrative Law Judge, vacate the $39,503,295.00 penalty, and issue an appropriate Order reflecting the relief requested.

Respectfully submitted,

Date: July 3, 2025

Jennifer Selber
Governor's General Counsel

Jonathan D. Koltash
Deputy General Counsel for Healthcare
Attorney I.D. 206234

Governor's Office of General Counsel
30 North 3rd Street, Suite 200
Harrisburg, PA  17101
jokoltash@pa.gov
Phone: (717) 783-6563

Dale T. Jenkins,
Senior Counsel
Attorney I.D. 90610
daljenkins@pa.gov

W. Scott Foster
Senior Counsel
Attorney I.D. 90266

21

wfoster@pa.gov

Office of General Counsel
Department of Human Services
7th and Forster Streets,
3rd Floor, Health & Human Services Bldg.
Harrisburg, PA 17120
(717) 783-2800